IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Derrick LaShawn Anderson a/k/a Derrick L. Anderson, <br><br>  Plaintiff, <br><br> v. <br><br> Ofc Sewell and Ofc Lasley, <br><br>  Defendants. | Civil Action No.2:11-cv-02686-MGL-BHH <br><br> **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |

The plaintiff, a state prisoner proceeding pro se, brought this action pursuant to Title 42, United States Code, Section 1983. This matter is before the Court upon Defendants' Motion for Summary Judgment (Dkt. No. 19).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate for consideration.

The plaintiff brought this action on or about September 26, 2011. (See Dkt. No. 1.) On March 6, 2012, Defendants filed a Motion for Summary Judgment. (Dkt. No. 19.) By order filed March 7, 2012, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On or about March 21, 2012, the Plaintiff filed a response opposing Defendants' Motion for Summary Judgment. (Dkt. No. 22.)

**PROCEDURAL FACTS**

Plaintiff, who is currently housed at Perry Correctional Institution ("PCI"), alleges claims pursuant to 42 U.S.C. § 1983. Plaintiff alleges that on July 2, 2010, he "was laying in [his] bed" when Defendant Officer Sewell "came by [Plaintiff's] room with that playing like he always do [sic]." (Dkt. No. 1 at 3 of 5.) According to Plaintiff, he told Sewell, "[G]o find

someone to play with because I don't play with yall polices [sic]." (Id.) Plaintiff alleges that Sewell was "beating on [Plaintiff's] door" and told Plaintiff "to give him [Plaintiff's] towel or take it down," but since Sewell was "still beating," Plaintiff ignored him. (Id.) Plaintiff alleges that Sewell reported the incident to Defendant Lasley, who was the dorm lieutenant at the time. (Id.)

According to Plaintiff, when Lasley arrived at Plaintiff's cell, Plaintiff got up "to talk to Lasley about his officer playing all the time," but Lasley "didn't want to hear what [Plaintiff] had to say." (Id.) Plaintiff alleges that he then told Lasley that "if they want the towel[,] they have the key to come get it"; Plaintiff told Lasley, "I'm not going to do nothing [sic]." (Id.) Plaintiff states that when Lasley came back later, Lasley again asked Plaintiff to give him the towel, but when Lasley declined to "hear [Plaintiff's] story," Plaintiff declined to give Lasley the towel. (Id.)

Plaintiff alleges that Lasley then "gassed" him. (Id.) According to Plaintiff, when "they rolled in [his] cell," Plaintiff got on his knees in the back of the room. (Id.) Plaintiff states, "Sewell gave me a little push and he put the cuffs on me and then hit my head on the floor 3 times." (Id.) Plaintiff alleges that he "had the prints and a big knot" on his head that "caused" him to "start having bad headaches." (Id.)

Plaintiff alleges he did not put up any "kind of resistance when they rolled in [his] room" and that he did not get any charge or punishment because he "didn't do anything." (Id. at 4 of 5.) Plaintiff states, "I got my head bashed on the floor out of spite by Ofc. Sewell and he already thinks he can do anything he wants . . . ." (Id.) Plaintiff seeks damages as well as the expenses incurred in the instant lawsuit, claiming he was subjected to "excessive force and cruel and unusual punishment." (Id. at 2, 5 of 5.)

## APPLICABLE LAW

**Summary Judgment Motion Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

## DISCUSSION

As noted above, Defendants seek summary judgment in the instant case. (See Dkt. No. 19.) Defendants contend, *inter alia*, that they are entitled to summary judgment because "the matters asserted by the Plaintiff do not fall within the scope of 42 U.S.C. § 1983." (Dkt. No. 19-1 at 1.) Defendants argue that Plaintiff has "failed to show that excessive force was used in violation of the Eighth Amendment" because "Defendants' actions were part of a good faith effort to maintain discipline and were not done maliciously or sadistically to cause harm to the Plaintiff." (Id. at 7.)

Defendants attached several exhibits to their Motion for Summary Judgment, including several affidavits and a DVD. (See generally Dkt. No. 19.) One such affidavit was that of Defendant Matthew Sewell. (See Dkt. No. 19-7.) Sewell states in his affidavit that in July of 2010, he was an officer at PCI and that he was assigned to the Special Management

3

Unit ("SMU"), a unit "used to house inmates who present a high security risk at a high security level." (Sewell Aff. ¶¶ 2-3.) Sewell indicates that on July 2, 2010, he was conducting cell checks in the SMU when he noticed that Plaintiff "had his towel hanging on his bed." (Id. ¶ 4.) Sewell states,

> I instructed the Plaintiff to remove the towel because I was unable to see him with his towel in place. The cell checks are conducted to make sure that inmates are not engaging in any type of improper activity, but also to make sure that the inmate is not in any kind of physical distress. I was unable to see the Plaintiff through the window in his cell door, so I instructed him to remove his towel so that I could make sure he was okay and not in any type of physical distress. The Plaintiff ignored my repeated instructions to remove the towel.

(Id.)

Sewell informed his supervisor, Defendant Lasley, of the situation. (Id. ¶ 7.) Lasley approached Plaintiff's cell and instructed the Plaintiff to remove the towel, but Plaintiff continued to refuse. (Id.; see also Lasley Aff. ¶ 5.) Lasley states in his affidavit that Lasley "notified Capt. Randall and Major Bush of the situation and was instructed to assemble a cell extraction team." (Lasley Aff. ¶ 5.) According to Lasley, he went back to Plaintiff's cell "and again instructed [Plaintiff] to remove the towel and informed [Plaintiff] that chemical munitions would be used if he refused to do so." (Id.) When Plaintiff again refused to remove the towel, Lasley "administered chemical munitions in an attempt to gain compliance." (Id.) Lasley states that chemical munitions "were used in an attempt to avoid having the cell extraction team enter the Plaintiff's cell," but Plaintiff "still refused to comply after chemical munitions were used." (Id.) Lasley stated that Plaintiff "grabbed his towel and wrapped it around his face as soon as [Lasley] administered chemical munitions in order to shield himself from the gas." (Id.) Although Plaintiff removed his towel, Lasley stated that Plaintiff had to be removed from his cell at that point "so the cell could be decontaminated because of the use of chemical munitions." (Id.)

4

Lasley stated that after approximately fifteen minutes, he returned to Plaintiff's cell and instructed Plaintiff to come to the cell door to be placed in restraints. (Id. ¶ 6.) According to Lasley, "[i]nmates in SMU must be placed in handcuffs and leg irons before they are removed from their cell" due to security concerns. (Id.) Lasley indicated that when the Plaintiff refused, the extraction team entered Plaintiff's cell, and Sewell was the first officer to enter the cell as he was using the riot shield. (Id ¶¶ 6-7.) Lasley stated,

> Officers are trained that when conducting a cell extraction, the inmate is to be immediately subdued by pinning him against the well or floor with the riot shield. This reduces the risk of injury to the officers and also the inmate. It also helps prevent an inmate from spitting on officers.

(Id. ¶ 7.) Lasley described the cell extraction as follows:

> When the officers entered the Plaintiff's cell, Officer Sewell used the riot shield to pin the Plaintiff against the wall and the remaining officers placed the Plaintiff face down on the ground as quickly as possible. Officers are trained to place an inmate on the ground face down as it is easier to control them and there is less risk of injury to the officers and to the inmate. The Plaintiff did not resist and was placed on the ground and placed in restraints. After restraints were in place, the Plaintiff was removed from the cell.

(Id.)

According to Lasley, Major Bush instructed that Plaintiff be transferred to a cell in another dorm. (Id. ¶ 8.) Lasley states that while Plaintiff initially walked under his own power, Plaintiff subsequently "refused to walk so the officers were required to carry him to the new cell." (Id.) Lasley further states in his afidavit,

> Once the Plaintiff was placed in his new cell, his jumpsuit was removed as it was contaminated with chemical munitions. Officers maintained control of the Plaintiff by placing him face down on his bed and one of the officers placed his knee on the Plaintiff's back in order to keep him from moving. I did not observe any injuries on the Plaintiff, but Plaintiff was examined by medical personnel because there had been a "use of force." SCDC considers a "use of force" to be any situation where you are required to place your hands on an inmate. The Plaintiff complained about having gas in his eyes and wanted to flush out his eyes, but did not voice any other complaints that I can recall.

5

(Id.) Both Sewell and Lasley state in their affidavits that they did not strike Plaintiff or observe any other officer strike Plaintiff. (Id. ¶ 9; Sewell Aff. ¶ 11.) In addition, as noted above, Defendants have filed a DVD of the at-issue incidents in this case.

Defendants contend they are entitled to summary judgment because "the matters asserted by the Plaintiff do not fall within the scope of 42 U.S.C. § 1983." (Dkt. No. 19-1 at 1.) To establish an Eighth Amendment excessive force claim against a prison official, an inmate must satisfy a two-pronged standard compromised of both a subjective inquiry (whether the defendant acted with a sufficiently culpable state of mind) and an objective inquiry (whether the force applied was objectively harmful enough to amount to a constitutional violation). Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). The subjective component requires an inmate to demonstrate that the force used by the officer inflicted unnecessary and wanton pain and suffering, a question that turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Hudson v. McMillian, 503 U.S. 1, 6 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986)). Factors the court should consider in determining whether a prison official acted maliciously and sadistically include: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible officials; and (4) any efforts made to temper the severity of a forceful response. See Hudson, 503 U.S. at 7; see also Williams, 77 F.3d at 762.

To prove the objective component of an excessive force claim, an inmate "must show that correctional officers' actions, taken contextually, were 'objectively harmful enough' to offend 'contemporary standards of decency.'" Stanley v. Hejirika, 134 F.3d 629, 634 (4th Cir. 1998) (quoting Hudson, 503 U.S. at 8). Under this analysis, the court "evaluate[s] the force

6

applied and the seriousness of the resulting injury against the need for the use of force and the context in which that need arose." Id. at 634.[1]

The undersigned recommends granting Defendants' Motion for Summary Judgment. (Dkt. No. 19.) It is undisputed that Plaintiff refused to remove his towel from his bed, despite repeated instructions from both Sewell and Lasley. In fact, Plaintiff states as much in his Complaint. (See Dkt. No. 1 at 3 of 5.) Defendants presented evidence that Plaintiff could not be seen when the towel was hanging on his bed, thus interfering with their cell checks. (See Sewell Aff. ¶ 4.) Defendants also presented evidence that "[c]ell checks are conducted to make sure that inmates are not engaging in any type of improper activity, but also to make sure that the inmate is not in any type of physical distress." (Id.) In addition to the evidence presented in their affidavits, the DVD clearly shows that Defendants did not use excessive force against Plaintiff. In the DVD, Lasley tells Plaintiff, at approximately 9:07: "I'm going to give you one directive, to come to the door and be cuffed, or I'm going to use gas." When Plaintiff does not come to the door to be cuffed, Lasley administers a spray of gas into Plaintiff's cell. At approximately 9:21, Plaintiff can be heard yelling, *inter alia*, "Let's get it! It's time to fight now!" At approximately 9:26, a different officer instructs Plaintiff to come to the door; Plaintiff does not comply. At approximately 9:48, Plaintiff is instructed yet again to come to the door to be cuffed; again he does not comply. At that point, officers can be seen entering Plaintiff's cell. Sewell used the riot shield to pin Plaintiff against the wall, and Plaintiff was then placed on the ground and secured in restraints. (See also Sewell Aff. ¶ 7.)

---

[1] In Wilkins v. Gaddy, 130 S. Ct. 1175 (2010), the Supreme Court abrogated the Fourth Circuit interpretation of Hudson requiring dismissal of excessive force claims in the absence of more than *de minimis* injury.

Because Major Bush instructed that the Plaintiff be transferred to a cell in another dorm, the officers escorted Plaintiff to his new cell. The DVD shows that at approximately 9:50, while the officers are escorting Plaintiff to the other cell, an officer instructs Plaintiff to stand up. When Plaintiff does not stand up, the officers carry Plaintiff. When Plaintiff arrives at his new cell, the officers continue to restrain Plaintiff until medical arrives.

As noted above, courts examine four factors in assessing whether a prison official acted maliciously and sadistically: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible officials; and (4) any efforts made to temper the severity of a forceful response. See Hudson, 503 U.S. at 7; see also Whitley v. Albers, 475 U.S. 312, 320-21 (1986). In the instant case, the undisputed facts show a clear need for application of force–Plaintiff repeatedly refused to comply with officers' directives.[2] See Williams v. Benjamin, 77 F.3d 756, 762 (4th Cir. 1996) (noting that "[a]pplying the first *Whitley* factor, the guards' decision to use some force to quell the disturbance was reasonable" where, under the plaintiff's version of the events, the inmates threw water at a prison official and refused to obey the commands to desist); see also Bell v. Wolfish, 441 U.S. 520, 547 (1979) ("Prison administrators . . . should be accorded wide-ranging deference in the adoption and

---

[2]In his Response in Opposition, Plaintiff makes much of the fact that Defendants indicate in their Affidavits that once they went into Plaintiff's cell, Plaintiff "did not resist . . . and was placed in restraints." (See Sewell Aff. ¶ 7.) Of course, this statement by Defendants indicates only that Plaintiff did not *continue* to resist once the officers entered his cell. The evidence presented by Defendants–and indeed shown in the DVD–reveals that Plaintiff's resistance is what caused Defendants to need to enter Plaintiff's cell in the first place. The fact that Plaintiff did not *continue* to resist once officers entered his cell did not abate the refusal to remove his towel and refusal to come to the door to have his hands cuffed. The undisputed evidence reveals that once chemical munitions were sprayed in Plaintiff's cell, Plaintiff had to be removed so that he could be decontaminated. (Sewell Aff. ¶ 5.) Plaintiff did not willingly cooperate with being removed from his cell, so force was necessary to secure compliance.

execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.").

The third factor also weighs in favor of granting Defendants' Motion for Summary Judgment; the threat reasonably perceived by officers reveals again that some use of force was justified. See Williams, 77 F.3d at 763. After the spray was administered into Plaintiff's cell, Plaintiff *still* declined to obey orders. Although Defendants state in their affidavits that once they went into Plaintiff's cell, Plaintiff "did not resist," before Defendants entered Plaintiff's cell, he can be heard on the DVD shouting, "Let's get it! It's time to fight now!" In addition, while Plaintiff is being held in his new cell waiting for medical, he says to the officer with his knee on Plaintiff's back, "I hope whoever this is on my back don't work in D dorm. I hope you don't work in D dorm. If you do, you've got hell to pay." On these undisputed facts, the officers reasonably perceived a threat. See Fennell v. Williams, No. 1:09-cv-02429-RBH, 2011 WL 251454, at *3 (D.S.C. Jan. 25, 2011) ("The Plaintiff's admitted failure to follow Officer Ricard's direct orders repeatedly created a reasonable perception that Plaintiff posed a treat to the safety of the staff and institution.").

The remaining two factors are the relationship between the need for application of force and the amount of force used, and efforts made to temper the severity of a forceful response. Whitley, 475 U.S. at 321. The force used was the amount necessary to gain compliance, and Defendants made several efforts to temper the severity of a forceful response. Plaintiff was instructed–many times–to remove the towel, but he refused to do so and indeed only removed the towel to shield himself when chemical munitions were used. And after the spray was administered, Plaintiff further refused to follow orders to come to the door to be cuffed, thus requiring the use of force to remove Plaintiff from his cell.

In the instant case, there is no genuine issue of material fact as to whether Defendants used excessive force. The undisputed evidence in the case *sub judice* reveals

9

that Defendants applied the force in a good-faith effort to restore discipline. See Wilkins, 130 S.Ct. at 1178 ("The core judicial inquiry . . . was not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."). The undersigned therefore recommends granting Defendants' motion.[3]

## **CONCLUSION**

Wherefore, it is RECOMMENDED that the Defendants' Motion for Summary Judgment (Dkt. No. 19) be GRANTED.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks<br>
United States Magistrate Judge

August 14, 2012
Charleston, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

---

[3]Defendants also seek summary judgment on the grounds that they are entitled to qualified immunity. (See Mem. in Supp. of Mot. for Summ. J. at 8-10.) The doctrine of qualified immunity protects governmental officials performing discretionary functions from liability for civil damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). When an official properly asserts the defense of qualified immunity, the official is entitled to summary judgment if either: (1) the facts, taken in the light most favorable to the plaintiff, do not present the elements necessary to state a violation of a constitutional right; or (2) the right was not clearly established, such that it would not have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Pearson v. Callahan, 555 U.S. 223, 231-32 (2009).

In the case *sub judice,* the undersigned recommends concluding that Defendants are entitled to qualified immunity. For the reasons detailed above, the facts taken in the light most favorable to Plaintiff do not establish the violation of a constitutional right.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).